Crystal INGRAM, Carlos Ingram, a minor, by and through Crystal Ingram, his mother and next friend, and Monique Ingram, a minor, by and through Crystal Ingram, her mother and next friend, Plaintiffs,

v.

Frank J. JONES, individually and as a police officer for the Village of Bellwood Police Department, Donald T. Sledge, individually and as a police officer for the Village of Bellwood Police Department, Jeanette Johnson, individually and as a police officer for the Village of Bellwood, Joe Weber, individually and as a police officer for the Village of Bellwood Police Department, Kevin S. Davis, individually and as a police officer for the Village of Bellwood, Alvin Perez, individually and as police officer for the Village of Bellwood, Russell F. Mangano, individually and as a police officer for the Village of Bellwood Police Department, John Doe Defendants 1–9, of the Village of Bellwood Police Department, all unknown individuals, and the Village of Bellwood, a municipal corporation, Defendants.

No. 95 C 2631.

United States District Court,
N.D. Illinois,
Eastern Division.

March 29, 1999.

Matthew J. Piers, Frederick Scott Rhine, Dana Helene Sukenik, Gessler, Flynn, Fleischmann, Hughes & Socol, Ltd., Chicago, IL, for plaintiffs.

David M. Jenkins, Quinlan & Crisham, P.C., Chicago, IL, for defendants.

### MEMORANDUM OPINION AND ORDER

KEYS, United States Magistrate Judge.

This matter is before the Court on Plaintiffs' Petition for Attorneys Fees and Costs, and Plaintiffs' Supplemental Petition for Attorneys Fees and Costs. For the following reasons, this Court grants in part, and denies in part, the two petitions. Thus, this Court enters, in favor of Plaintiffs and against Defendants, an award of attorneys' fees and costs totalling $119,901.25.

### BACKGROUND

This case stems from the August 6, 1993 arrest of Plaintiff Crystal Ingram, following a traffic stop outside of her home in Bellwood, Illinois. Her minor children, Plaintiffs Carlos and Monique Ingram, were present during the arrest. Ms. Ingram was charged with several traffic violations, along with misdemeanor charges of battery and resisting arrest. On June 17, 1994, those charges were dismissed on the prosecutor's motion. On May 2, 1995, Plaintiffs filed the instant civil rights claim in federal court.

The First Amended Complaint[1] included the following seven counts: False Ar-

---

1. The original fifteen count Complaint included, *inter alia*, counts of False Arrest, Excessive Force, Sexual Harassment, and Intentional Infliction of Emotional Distress ("IIED") as to each of the Plaintiffs. District Judge John A. Nordberg dismissed many of

rest; Excessive Force During Arrest; Sexual Harassment; Conspiracy; and IIED as to each of the three Plaintiffs. Judge Nordberg dismissed the Village as a Defendant and dismissed all counts against the remaining Defendants, in their official capacities. *Ingram v. Jones*, No. 95 C 2631, 1996 WL 355365, at *5 (N.D.Ill. June 21, 1996). Judge Nordberg also dismissed the Conspiracy count in its entirety, and granted summary judgment to Defendants Johnson, Davis, Perez, and Mangano on the False Arrest, Excessive Force, Sexual Harassment, and IIED counts.[2] *Ingram v. Jones*, 1996 WL 355365, at *5.

After discovery progressed, on October 22, 1996, Plaintiffs moved for reconsideration of the dismissal of the conspiracy and malicious prosecution counts of their (original) Complaint (and for leave to file a Second Amended Complaint adding these counts back in since they were not included in the First Amended Complaint). Judge Nordberg denied the motion and found that parts of the motion "misstate[d]" the law and made "frivolous" arguments. *Ingram v. Jones*, No. 95 C 2631, 1997 WL 323538, at *2–3 (N.D.Ill. June 9, 1997).[3]

In April of 1997, the case settled for a total of $57,500: $40,000 for Crystal Ingram; $10,000 for Carlos Ingram; and $7,500 for Monique Ingram. This settlement was then the subject of further disagreement between the parties. A motion to enforce settlement was presented by Plaintiffs on September 10, 1997, and was ultimately denied by Judge Nordberg on January 8, 1998. Further settlement discussions were held by this Court, and final settlement was eventually reached as to the damages claims. The parties then consented to this Court's jurisdiction with respect to the attorneys' fees and costs sought by Plaintiffs; Plaintiffs (combining the initial petition and the supplemental one) seek a total of $192,521.83 for fees and costs.[4]

## DISCUSSION

■ Title 42 U.S.C. § 1988 (" § 1988") provides, in relevant part, that "[i]n any action or proceeding to enforce a provision of section[ ] . . . 1983 . . . of this title . . ., the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." In order for a party to collect attorneys' fees under § 1988 the party must show: (1) that it has prevailed; and (2) that its fee request is reasonable. *Farrar v. Hobby*, 506 U.S. 103, 109–14, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).

### A. Legal Standard to Determine Prevailing Party Status

■ Generally, plaintiffs are considered to be prevailing parties "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Estate of Borst v. O'Brien*, 979 F.2d 511, 515 (7th Cir.1992). However, even where the plaintiffs do not "win" on a significant issue in the litigation, if they obtain some of the relief originally sought by bringing the lawsuit, they may be prevailing parties. *See Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 65 L.Ed.2d 653, (1980).

The equivalency doctrine permits a party to "prevail" and recover attorneys fees if the lawsuit "produces voluntary action by the defendant that affords the plaintiff all or some of the relief he

---

the charges. *Ingram v. Jones*, No. 95 C 2631, 1995 WL 745849, at *13 (N.D.Ill. Nov.29, 1995).

2. Judge Nordberg also dismissed the False Arrest and Excessive Force counts against Defendants Johnson, Davis, Perez, and Mangano.

3. However, Judge Nordberg vacated this Order on July 10, 1997.

4. Plaintiffs seek 186, 611.50 for attorneys' fees and $5,910.33 for costs.

sought through a judgment—e.g., a monetary settlement or a change in conduct that redresses the plaintiff's grievance".

*Stewart v. McGinnis,* 5 F.3d 1031, 1039 (7th Cir.1993) (quoting *Hewitt v. Helms,* 482 U.S. 755, 760–61, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987)). Thus, a two-part test is applied to determine whether plaintiffs have "prevailed through settlement prior to a full litigation on the merits" (such that attorneys' fees may be available): 1) the plaintiffs' "lawsuit must be causally linked to the achievement of the relief obtained"; and 2) the defendant "must not have acted wholly gratuitously, i.e., the plaintiffs' claims, if pressed, cannot have been frivolous, unreasonable, or groundless." *Nanetti v. University of Ill. at Chicago,* 867 F.2d 990, 992–93 (7th Cir.1989).

Here, it is evident that the litigation was a causal link to the achievement of the relief obtained,[5] and that Defendants did not act wholly gratuitously. The Court also finds that, despite Defendants obligatory arguments to the contrary, this was not a nuisance value settlement.[6]

### B. *Calculation of Reasonable Attorneys' Fees to Which Plaintiffs are Entitled*

The above finding, that Plaintiffs prevailed, brings them over the statutory threshold (i.e. indicating that an award of attorneys' fees is potentially available). Next, the reasonableness of the attorneys' fees, costs, and expenses that Plaintiffs seek to collect must be determined.

### 1. Legal Standard to Determine Reasonableness of Fees

Determination of a fee award is left to the court's discretion. *Eddleman v.*

---

5. Although numerous counts of the Complaint were dismissed by Judge Nordberg, this Court finds that the litigation was causally linked to the relief eventually obtained.

6. The fact that five of the Defendants were either dismissed from the case or were grant-

*Switchcraft, Inc.,* 965 F.2d 422, 424 (7th Cir.1992). Attorneys' fees are calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. What constitutes a reasonable hourly rate is determined by "prevailing market rates in the relevant community." *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *see also McNabola v. Chicago Transit Auth.,* 10 F.3d 501, 519 (7th Cir.1993).

The party requesting the fee award bears the burden of substantiating, to the Court's satisfaction, the requested rate as well as the hours expended. *McNabola,* 10 F.3d at 518; *Borst,* 979 F.2d at 515; *see Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. Where the documentation of hours is inadequate, the Court may reduce or deny the award accordingly. *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933; *FMC Corp. v. Varonos,* 892 F.2d 1308, 1316 (7th Cir.1990) (where the claim for fees is not supported by accurate or detailed records, the Court may deny the fee request). Additionally, the Court should scrutinize the fee petition carefully for indications of duplicative time. *FMC,* 892 F.2d at 1316. The Court may increase or decrease the fee request in light of the twelve *Hensley* factors:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the

---

ed summary judgment in their favor prior to settlement, does not mean that Plaintiffs' claims were groundless. Defendants Sledge, Jones, and Weber remained, as did six of the seven counts of the First Amended Complaint.

"undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

461 U.S. at 429–430 n. 3, 103 S.Ct. 1933 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir.1974)).[7]

**2. Application**

Plaintiffs request a total of $186,611.50 in attorneys' fees. Attorney Matthew J. Piers bills at $275 per hour, Terence J. Moran bills at $230 per hour, Frederick S. Rhine bills at $205 per hour, Charles J. Holley bills at $150 per hour, and Dana H. Sukenik bills at $125 per hour.[8]

■ The Court finds the hourly rates for the aforementioned attorneys to be appropriate for their experience and expertise, within the Chicago market rates for similar attorneys (for civil rights litigation).[9] However, there are a variety of problems with the number of hours expended by the attorneys. The Court has scrutinized each billing entry and attorney description, submitted by Plaintiffs in support of their request. Based upon its in-depth examination, the Court finds that attorneys' fees claimed by Plaintiffs should be reduced by a total of $66,830.25.

The amount of "intra-office conferencing" done in this case was excessive. Moreover, the majority of the descriptions accompanying the bills do not offer details as to what these conferences were about. Therefore, the Court deducted extraneous conferencing times and extracted them from "clumped" descriptions where it was possible to discern those amounts.[10] For example, on November 7, 1995, Mr. Moran billed .40 hours for "Conference with Mr. Holley" and the Court was able to deduct this same .40 amount from the November 7, 1995, 4.50 hours billed by Mr. Holley for "Review case law re: motion to quash subpoena; conference with Mr. Moran re: hearing; hearing on motion; conference with Mr. Moran re: results of hearing."

Additionally, Plaintiffs' fees were reduced due to performance of ministerial tasks which could have been handled by lesser billing individuals. For example, Ms. Sukenik's November 27, 1996 entry of .20 hours billed for "confirm[ing] client's appointment with Dr. Hamilton–Bennett," and her June 28, 1996 entry of .20 hours to "Send check and request for tax returns to IRS."

The Court also discounted billings where a partner did work that could have been done by a lower billing associate. In particular, with respect to the drafting of the fee petition in this case (time entries for which are provided in the Supplemental fee petition), this Court substituted Ms. Sukenik's hourly rate for that of Mr. Rhine.

The Court additionally deducted time billed where the entries were too vague (most of these entries also fall under the category of excessive conferencing) or where the time billed for the task (most

---

7. Many of these factors are "subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley,* 461 U.S. at 434 n. 9, 103 S.Ct. 1933.

8. There were a number of other hours billed for individuals (including, but not limited to Claudia Gomez and Vanessa Weathersby), however there was no information provided about these individuals or their qualifications; therefore, the Court will disregard those fees.

9. With respect to the criminal case and fees charged, this Court finds that the case closely relates to this civil case, making the time billed on the criminal case recoverable, as well. However, because there is no indication in any supporting documents or affidavits that Mr. Piers or Mr. Holley have the slightest expertise in criminal defense work, this Court has halved their hourly rates in awarding fees for time expended during the criminal case.

10. In a number of time entries, different tasks were described but only a single amount of time was billed. Thus, the Court's ability to determine exactly how much time was spent on a particular, separate activity, was impeded. The practice of "clumping" time entries is strongly discouraged.

often for drafting and editing) was simply excessive. Finally, the Court reduced the fees sought by 15.1 hours for Mr. Piers and 77.2 hours for Ms. Sukenik for time billed on the Motion to Reconsider, which Judge Nordberg found contained misstatements of law and frivolous arguments (and the related, but never filed, Reply Brief).

Thus, the Court grants Plaintiffs' initial petition for attorneys' fees for: 103.9 hours at $275 per hour for Mr. Piers; 8.1 hours at $230 per hour for Mr. Moran; 30.4 hours at $205 per hour for Mr. Rhine; 241.5 hours at $150 per hour for Mr. Holley; and 179.3 hours at $125 per hour for Ms. Sukenik. Additionally, the Court grants Plaintiffs fees for Mr. Piers' 16.9 hours at $275 per hour for the supplemental fee petition and 44.8 hours for Mr. Rhine's work (at the reduced rate of $125 per hour which is Ms. Sukenik's hourly rate). Finally, for work on the criminal case, this Court awards Plaintiffs for 58.1 hours billed by Mr. Piers at the rate of $137.5 per hour and for 83.2 hours billed by Mr. Holley at $75 per hour. *See supra* n. 9.

In summary, after reducing the fees by the amounts indicated above, the Court finds that the total, $119,781.25, represents a reasonable fee for the "degree of success obtained." *Hensley*, 461 U.S. at 436, 103 S.Ct. 1933.

## C. Costs

Plaintiffs request a total of $5,910.33 for costs. Specifically, they seek $197.55 for messenger service, $79.78 for postage, $113 for faxes, $1,120.10 for photocopies,[11] $14.29 for long-distance phone calls, $2,000 for psychiatric examinations, $374 for deposition deposit ($10) and deposition ($364), $1,766.11 for Westlaw/Lexis research, $30 for obtaining hospital records, $6 for obtaining a "Certified Disposition", $4 for a vehicle registration search, $43.50 for copies of photographs, $23 for lunch,

$19 for parking and travel, and $120 for filing the case in federal court.

■ The Seventh Circuit has held that:

expenses of litigation that are distinct from either statutory costs or the costs of the lawyer's time reflected in his hourly billing rates—expenses for such things as postage, long-distance calls, xeroxing, travel, paralegals, and expert witnesses—are part of the reasonable attorney's fee allowed by the Civil Rights Attorney's Fees Awards Act.

*Heiar v. Crawford County, Wis.*, 746 F.2d 1190, 1203 (7th Cir.1984), *cert. denied,* 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985); *see also Downes v. Volkswagen of Am., Inc.*, 41 F.3d 1132, 1144 (7th Cir. 1994); *Herzog Contracting Corp. v. McGowen Corp.*, 976 F.2d 1062, 1065 (7th Cir.1992). Nonetheless, after careful review, the Court finds that all costs claimed by Plaintiffs, except the $120 filing fee for the Complaint, must be denied.

Plaintiffs failed to provide any supporting documentation—such as receipts or even descriptions/explanations—for the costs and expenses sought here. As to the messenger service and faxes, it is impossible to discern whether rapid transmission was reasonable, or even necessary. There is no information about what was being rapidly transmitted or where it was going. Likewise, there is no indication as to the number of photocopies made, or even the amount charged per page. Nor is there any information about the long-distance calls, specifically, why and to whom they were made. There was also no explanation about what the postage covered. Similarly, there were no receipts or details given with regard to: the psychiatric examinations; the deposition; the cost of obtaining hospital records; the cost for obtaining a "Certified Disposition"; the vehicle registration search; the photograph

---

**11.** The original petition sought $179.55 for messengers, $68.96 for postage, $91 for faxes, and $1,105.30 for copies. The supplemental petition sought $18 for messengers, $10.82 for postage, $22 for faxes, and $14.80 for copies.

copies; the Westlaw/Lexis research; the lunch; and the parking and travel.

The scant information contained in the two petitions is simply insufficient to inform this Court as to whether the above costs were necessary or reasonable. Thus, this Court is not satisfied that the costs sought here, excluding the $120 for filing,[12] were reasonable or even necessary.

### CONCLUSION

Plaintiffs are entitled to reasonable attorneys' fees of $119,781.25 and costs of $120.

**IT IS THEREFORE ORDERED** that:

Plaintiffs' Petition for Attorneys Fees and Costs be, and the same hereby is, granted in part, and denied in part.

Plaintiffs' Supplemental Petition for Attorneys Fees and Costs be and the same hereby is, granted in part, and denied in part.

Defendants shall pay Plaintiffs a total of $119,901.25 for attorneys' fees and costs.

---

**12.** The Court takes judicial notice that the fee for filing cases in federal court was $120 when this case was filed. It has since increased to $150.